MINER, Judge.
The employer/carrier (e/c) challenge a workers’ compensation order awarding the claimant wage-loss benefits. They contend that the deputy commissioner’s (dc) finding of a causal relationship between her 1981 industrial accidents and the injuries of which she now complains is based upon subjective complaints of pain alone and is unsupported by objective medical evidence, and that her present condition is related to her preexisting hereditary degenerative arthritic aging condition and overweight status. The finding of a causal relationship between the 1981 industrial accidents and her present condition is supported by competent substantial evidence in the record. However, we find that the record does not support the finding that the claimant reached maximum medical improvement (MMI) on October 13, 1982, and therefore reverse the award of wage-loss benefits.
The claimant, an obese 56-year-old LPN charge nurse, worked for the employer from 1979 until her employment was terminated on March 29, 1982. In 1981 and early 1982, she suffered a series of slip- and-fall accidents, each mishap resulting in injury to her left knee and to her low back, radiating to her left hip. She had no preexisting disabilities prior to these mishaps. She filed a report but received no medical treatment for the first injury in June 1981. She was treated conservatively by Dr. Barrett and missed one week of work for the second injury in September. Emergency room personnel referred her to Dr. Siek after her third injury in October 1981, but she did not see him until a week later. Dr. Siek diagnosed “abductor tendinitis, left hip inflammation and medial collateral ligament left knee.” The X-rays were unremarkable except for arthritic changes. She received cortisone injections to her left knee and left hip in December 1981 and January 1982.
At the end of January, the claimant fell on the exit steps outside her place of employment, again injuring her back, hip and knee. The knee X-rays indicated “calcification in the medial meniscus suggesting pseudogout,” a hereditary disease. Dr. Siek released her to return to work after seventeen days without work restrictions. In March 1982, Dr. Siek again saw her and reported that she had no back pain or back tenderness. He referred her to Dr. Barrett, who prescribed an arthroscopic examination.
In April 1982, the claimant was hospitalized for X-rays and an arthroscopic exam. The tests were unremarkable but revealed a degenerative disease. In September 1982, Dr. Wallace rendered a second opinion noting the claimant’s continuing complaints of low back pain radiating into the left leg despite the treating physicians’ reports. He placed no work restrictions on her but recommended a psychiatric evaluation the results of which were equivocal.
The claimant was treated conservatively through 1987. In a letter dated October 13, 1982, Dr. Barrett stated nothing more could be done for her, *but expressed misgivings about his ability to set a permanent physical impairment (PPI) rating. However, in December 1983, Dr. Barrett reported that the claimant had improved and that he expected further improvement. In 1987, several doctors reported that a PPI rating *1026 would be unsubstantiated, despite the claimant’s 1982 arthroscopic debridement, because of her degenerative arthritis and overweight status. On June 8, 1987, Dr. Slomka reported, “This patient gives a history of multiple falls which have resulted in pain in the back and the left knee.”
The dc found the claimant’s present condition related to her 1981 industrial accidents, based upon the combination of her asymptomatic condition prior to the 1981 accidents and her verifiable periodic physical problems. He noted that the doctors’ opinions referred to her 1982 injury, not the 1981 injuries; that one doctor did tie her multiple injuries to her present condition; that all the doctors recognized her resulting physical restrictions and reduced ability to work; and that all the doctors reported some associated permanent physical impairment (PPI) without ratings. He found that the claimant had reached MMI on October 13, 1982, based on Dr. Barrett’s letter, and awarded her retroactive wage-loss benefits. He also approved a change in doctors because of her change of address, awarded costs and penalties for the e/c’s failure to file a timely notice to controvert the claim, and reserved jurisdiction to entertain a claim for bad faith attorney fees.
Lay testimony may constitute competent substantial evidence to establish the required causal relationship between the accident and the injury where the symptoms are within the actual knowledge of the claimant. R.P. Hewett & Associates of Florida, Inc. v. McKimie, 416 So.2d 1230 (Pla. 1st DCA 1982). Lay testimony is sufficient even when it conflicts with medical evidence. Square G. Constr., Co. v. Grace, 412 So.2d 397 (Pla. 1st DCA 1982), citing Crowell v. Messana Contractors, 180 So.2d 329, 330 (Fla.1965). Subjective complaints of pain corroborated by a physician entitle a claimaift to compensation benefits. Miller v. Farren’s Tree Surgeons, Inc., 476 So.2d 1387 (Pla. 1st DCA 1985). Medical incapacity need not be shown by medical expert testimony, particularly when the claimant’s subjective complaints of incapacity and pain have been confirmed by surgery. Kenney v. Juno Fire Control District, 506 So.2d 449 (Fla. 1st DCA 1987); Barter v. Zayre Corp., 449 So.2d 944 (Fla. 1st DCA 1984).
A dc may not reject unrefuted evidence from a medical expert's reports which confirm a causal relationship between the claimant’s incapacity and accident. Patterson v. Wellcraft Marine, 509 So.2d 1195 (Pla. 1st DCA 1987). A dc’s finding of a causal relationship is also justified when the record shows the claimant is physically incapable of working in the same manner as before the industrial accident. Dade Federal Savings & Loan Assoc. v. Smith, 403 So.2d 995 (Pla. 1st DCA 1981).
This claimant was asymptomatic prior to her 1981 on-the-job injuries. Although the medical reports are conflicting, some reports support her testimony regarding a causal relationship between her falls and the injury to her left knee. She was hospitalized for arthroscopic debridement of her medial meniscus, and at various times her physicians provided conservative care by cortisone injections and restricted her from work. This treatment corroborates her complaints. The dc explained that Dr. Slomka’s report, which related the claimant’s multiple accidents to her injuries, was unrefuted by any other physician’s report. The dc’s finding of a causal relationship is supported by competent substantial evidence. However, no competent substantial evidence supports the dc’s determination that the claimant reached MMI on October 13,1982. As long as a need for medical treatment exists and further improvement is reasonably expected, the claimant has not reached MMI. Hall v. Dade County School Board, 492 So.2d 768 (Pla. 1st DCA 1986). Dr. Barrett’s October 1982 letter fails to address the question of MMI, and the record contains medical reports subsequent to his letter which indicate a need for medical treatment, that the claimant had improved, and that further improvement was reasonably expected. The dc’s finding of MMI and the award of wage-loss benefits must be reversed and the cause remanded for determination of *1027 whether the claimant has reached MMI and to what type of benefits she is entitled.
Moreover, absent medical testimony that the claimant has or has not reached MMI, the dc is unable to address the issue of permanent disability. Stewart v. Resort Inns of America, 513 So.2d 1334 (Fla. 1st DCA 1987). Therefore, the dc’s finding a PPI must be reversed until the MMI date has been properly determined. The dc may allow the parties to present further strictly limited evidence for the purpose of making these determinations.
The e/c presented evidence that the claimant’s employment was terminated because she failed to disclose moonlighting employment while she was collecting full workers’ compensation benefits in March 1982. They sought a credit from March 18, through May 5, 1982, when she worked and collected full benefits. While the dc noted that the claimant had not refuted the e/c’s evidence, he failed to reach a finding on this issue in his order. On remand, we direct him to determine whether a credit is due and for what period.
The e/c also contested the claimant’s successfully requested change in physicians closer to her new residence.' We affirm this reasonable' change in physicians.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
BOOTH and JOANOS, JJ., concur.