BARFIELD, Judge.
In this appeal and cross-appeal from a workers’ compensation order, we affirm the award of temporary total disability (TTD) benefits from May 1, 1986, but reverse the denial of TTD benefits from January 25, 1986, to that date.
The claimant injured his lower back at work in November 1984. Tests indicated degenerative disc disease and a possible herniated disc, but his doctors concluded that a lumbar myelogram showed no herniated disc or spinal stenosis[1] and treated his back injury conservatively.
Dr. Saenger, an orthopedic surgeon who examined him at the request of the carrier, found he had reached maximum medical improvement (MMI) by October 1985 with no evidence of nerve root compression or permanent disability. He was evaluated for Social Security disability on November 19 by Dr. Owen, another orthopedic surgeon. On November 20, the carrier’s adjuster informed him that his request for chiropractic care was denied and that further medical treatment was terminated, based on Dr. Saenger’s report. Temporary total disability benefits, which had been paid since the 1984 accident, were discontinued on January 24, 1986.
On his own, the claimant then returned to Dr. Owen, who found no change in his condition and prescribed pain medication and a lumbar corset. He was referred by the oncologist treating his terminally ill wife to Dr. Jarrett, an orthopedic surgeon, who examined him on May 1, suspected a herniated disc, and recommended a myelo-gram. The claimant called the insurance agent who handled workers’ compensation insurance for the employer, who in turn contacted the carrier, but the request for continued medical care was ultimately denied. He nevertheless underwent the mye-logram, which indicated a herniated disc. After getting a second opinion from Dr. Spencer, Dr. Jarrett performed a laminecto-my.
In his deposition shortly before the hearing, Dr. Jarrett testified that the calcified herniated disc which he found at L5-S1 “had been there for a while” and was causally related to the industrial accident which had aggravated the claimant’s pre-existing degenerative disc disease. He noted that the current CT scan was essentially the same as the 1984 scan and that ankle reflex problems (which the claimant had exhibited since after the accident) can be caused by a herniated disc. He testified that the claimant was unable to “stay up” for half of a day and could not have returned to work since he began treating him, and that if the claimant’s symptoms had been the same prior to the time he first saw him, his opinion “would be the same.” He opined that if Dr. Saenger had continued to treat the claimant, “he probably would have done a laminectomy sooner or later.”
Dr. Saenger admitted that decreased ankle reflexes are a sign of nerve compromise, that the 1984 CT scan had indicated nerve compression, that he had seen evidence of a herniated disc, and that the 1984 injury could exacerbate a previously non-symptomatic condition. He testified that he had wanted to improve the claimant’s life habits (smoking and exercise) before pursuing surgery, and admitted that if he had seen the results from the subsequent tests which Dr. Jarrett performed, he “quite possibly would have performed surgery.”
*255 In his order, the deputy found that the claimant had not yet reached MMI and ordered the employer/carrier to pay past medical bills, to continue to provide remedial and/or palliative medical care, and to pay TTD benefits from May 1, 1986, and continuing so long as he remains temporarily totally disabled. The claim for temporary disability benefits from January 25 to May 1, 1986, was denied on the ground that there was no medical evidence that the claimant was temporarily totally disabled during that period and that he had not conducted a work search to establish his entitlement to temporary partial disability benefits.
The record indicates that the claimant suffered a herniated disc in 1984 which was suspected by every doctor who examined him, but which was not affirmatively diagnosed until Dr. Jarrett performed a second myelogram in May 1986. Dr. Jarrett’s testimony supports the deputy commissioner’s finding that the claimant has not yet reached MMI and is entitled to TTD and medical benefits.
While it is true that no doctor testified directly that he was incapable of working from January 1986 (when the carrier terminated compensation benefits) to May 1986 (when Dr. Jarrett first saw him), the record amply supports a determination that he was temporarily totally disabled for that period. The carrier had paid TTD benefits up to January 25, 1986. The deputy commissioner found him temporarily totally disabled after May 1, 1986, based upon the testimony of Dr. Jarrett, whose description indicates a person who could not uninterruptedly maintain meaningful employment. Dr. Owen testified that when he saw the claimant in March 1986, his condition was unchanged from when he first saw him in November 1985 (when he was receiving TTD benefits). The claimant’s testimony that his condition remained unchanged during the claimed period is uncontradicted. His earlier attempt to perform very light duties (answering the telephone part-time) had been aborted because of his back pain. We agree with the claimant that it is illogical to assume that his very severe symptoms which were caused by the herniated disc somehow abated during the claimed period.
Under the circumstances of this case, the evidence taken as a whole would support a finding that the claimant was temporarily totally disabled from January 25 to May 1, 1986, notwithstanding that no doctor testified directly that he could not work during this time period. The deputy commissioner made no specific determination of the claimant’s actual ability or inability to work during this period, but denied benefits under the apparent misconception that direct medical testimony to that effect was required.
The denial of temporary total disability benefits from January 25 to May 1,1986, is therefore REVERSED and the case is REMANDED to the deputy commissioner for reconsideration of the claimant’s entitlement to temporary total disability benefits for that period. In all other respects the order is AFFIRMED.
WENTWORTH, J. and FRANK, RICHARD H., Associate Judge, concur.

. The radiologist noted that the myelogram was "very insensitive" at the L5-S1 region.